998 F.2d 1016
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Grenda HARMER, Petitioner/Appellant,
v.
Charles ADKINS and Indiana Attorney General, Respondents/Appellees.
 No. 92-2855.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 9, 1993.*
Decided July 12, 1993.
 
 Before BAUER, Chief Judge, and CUDAHY and KANNE, CIRCUIT JUDGE.
 
 ORDER
 
 1
 Grenda Harmer filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that the Conduct Adjustment Board ("CAB") at the prison where he is incarcerated deprived him of his good-time credits in violation of the Due Process Clause of the Fourteenth Amendment. Specifically, Harmer complains that prison officials failed to provide him with the prison's disciplinary handbook (which is entitled, "Adult Authority Disciplinary Policy) prior to his disciplinary hearings before the CAB on January 20, 1982, and February 23, 1989. In the 1982 hearing the CAB found Harmer guilty of assaulting a correctional officer, sentenced Harmer to 730 days in segregation, took away 180 days of credit time, and demoted Harmer from credit class one to credit class three.[1] In the 1989 hearing the CAB judged Harmer guilty of making sexual proposals or threats to a correctional officer and demoted Harmer from credit class one to credit class two. Both rulings were affirmed by the superintendent of the prison. These disciplinary proceedings, Harmer submits, violated his due process rights, for he was not notified of the disciplinary rules, procedures, or sanctions prior to the hearings. The district court found that Harmer's claim lacked merit and dismissed Harmer's petition, without prejudice. Harmer subsequently filed a notice of appeal and the district court granted a certificate of probable cause.
 
 
 2
 Harmer's claim purports to be about procedures used by the CAB, the type of claim for which 42 U.S.C. § 1983 might provide a remedy. See Wolff v. McDonnell, 418 U.S. 539 (1974). A suit about the conduct of prison disciplinary proceedings may be merely a challenge to the conditions of a prisoner's confinement and, as such, is properly brought under § 1983, not the habeas corpus statute. Clark v. Thompson, 960 F.2d 663, 664 (7th Cir.1992). But Harmer does not seek to change the conditions of his confinement. Rather, he seeks to recover lost good-time credits and to be retroactively reassigned to credit class one. If he wins, the duration of his confinement will be shorter. Because what Harmer seeks is "a quantum change in the level of [his] custody," his proper remedy is habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475 (1973); Graham v. Broglin, 922 F.2d 379, 380-81 (7th Cir.1991).
 
 
 3
 Harmer argues that the Due Process Clause of the Fourteenth Amendment imposes a duty on prison officials to provide every inmate with a personal copy of the handbook describing the prison's regulations and disciplinary proceedings prior to every disciplinary hearing. We disagree. The Due Process Clause requires prison officials to provide an inmate who is subject to disciplinary proceedings with: advance written notice of the claimed violation no less than twenty-four hours before the hearing; a hearing with the limited right to call witnesses and present documentary evidence in his defense; and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken. Wolff, 418 U.S. at 563-70.
 
 
 4
 In both of the disciplinary proceedings Harmer received all the process that he was due. Five days prior to the January 1982 hearing Harmer received a document styled "Notice of Conduct Adjustment Board Hearing." This document notified Harmer that he was charged with assaulting a prison staff member on January 13, 1982, and listed the rights to which he was entitled, among them the right to lay representation, the right to a fair hearing before impartial decision makers, the right to present documentary evidence, and the right to receive a written copy of the CAB's finding of fact. The document also notified Harmer that a finding of guilty could result in a drop in credit class and the loss of good-time credits. Harmer received a hearing before the CAB during which he presented neither witnesses nor documentary evidence. Following the hearing Harmer was provided with a written explanation of the evidence that the CAB relied upon, and the punishment that it imposed. Three days prior to his February 1989 hearing Harmer received substantially the same notice of the disciplinary hearing that he had received prior to his 1982 hearing. The notice stated that he was charged with making sexual proposals on February 15, 1989, and advised him of his rights and possible sanctions if he was found guilty. At his hearing Harmer requested that two fellow inmates appear as witnesses, but they refused. Harmer did not present documentary evidence. He was found guilty and was provided with an explanation of the CAB's decision and notification of the punishment that the CAB imposed. Certainly the record demonstrates that both disciplinary proceedings complied with the requirements of Wolff and the Due Process Clause. Harmer's protestations notwithstanding, prison officials did not have to provide him with a personal copy of the prison's disciplinary handbook prior to each of the two disciplinary proceedings in order to meet the minimum requirements of the Due Process Clause.
 
 
 5
 Finally, Harmer contends that Indiana law grants inmates a property interest in the disciplinary handbook for the purpose of the Due Process Clause and by failing to provide him with a personal copy of the handbook the prison officials unconstitutionally deprived him of his property. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454 (1989). Only statutes or regulations attaching consequences to particular circumstances give prisoners property interests. Id. at 460-63. The statute or rule must have " 'explicitly mandatory language,' in connection with the establishment of 'specified substantive predicates' to limit discretion." Id. at 463. Harmer relies on a section of the Indiana Code that provides: "The department [of correction] shall adopt rules for the maintenance of order and discipline among committed persons.... These rules shall be made available to all committed persons." Ind.Code § 11-11-5-2 (1992). He argues that the use of the word "shall" in the statute gives Indiana inmates a property interest in the disciplinary handbook by limiting the discretion of prison officials to provide inmates with copies of the handbook. Each inmate, he contends, has a legally enforceable property interest in a personal copy of the handbook.
 
 
 6
 Section 11-11-5-2 does not give each inmate a property interest in a personal copy of the disciplinary handbook. True, the provision places substantive limitations on official discretion, Olim v. Wakinekona, 461 U.S. 238, 249 (1983), but only with respect to insuring the availability of the rules and procedures in the handbook. Any interest created by this provision can be satisfied by placing a copy of the handbook in the prison library or by posting the rules and procedures in a common area. As noted above, Harmer does not allege or establish that he could not get a copy of the handbook from the library. His sole contention is that he was entitled to a personal copy of the handbook. Indiana law creates no such property interest. The language of the statute says that the rules "shall be made available to all [inmates]," not that the handbook containing the rules "shall be given to all inmates." We reject Harmer's invitation to ignore the distinction between making the rules available to every inmate, and giving a handbook containing the rules to every inmate.
 
 
 7
 Harmer also directs us to a paragraph in the disciplinary handbook itself that, he argues, gives every inmate a property interest in a personal copy of the handbook. The paragraph reads in relevant part: "A handbook that contains the disciplinary code procedures, offenses, and sanctions shall be given to each offender and staff member.... Each offender and staff member shall acknowledge receipt of the handbook by signature." Indiana Department of Correction, Adult Disciplinary Policy Procedures 6 (1979). While we are inclined to agree with Harmer's assertion that this language is sufficiently mandatory to create a property interest in the handbook, see Hewitt v. Helms, 459 U.S. 460, 471-72 (1983), we cannot agree that the department of correction created such an interest in promulgating the rule. Only the use of mandatory language in connection with the establishment of "specified substantive predicates" to limit the discretion of the prison officials creates a property interest. Thompson, 490 U.S. at 463. In other words, to create a property interest the state must provide, through its laws or regulations, particularized standards or criteria to guide the discretion of the prison officials. Id. at 462. As noted above, section 11-11-5-2 of the Indiana Code guides the discretion of prison officials in providing inmates with access to the handbook. The department has no discretion in making the rules in the handbook available to all inmates--it must do so. But that is the extent of the guidance provided by Indiana law. There is no statute requiring the department of correction to provide every inmate with a personal copy of the disciplinary handbook. Nor is there any regulation in the Indiana Administrative Code that imposes such a requirement. The handbook itself cannot be characterized as a regulation within the meaning of Thompson, for the disciplinary rules and procedures promulgated by the department of correction are intended to relate solely to internal policy and procedure, and do not have the force of law. Ind.Code § 11-11-5-2 (1992). Thus, the department of correction has the discretion to decide how to make the rules available to the inmates. The department can decide to give every inmate a copy of the handbook and, for almost no reason, later decide to discontinue that practice, so long as it otherwise makes the rules available to all inmates. Because how the department makes available the rules to all inmates is entirely within the department's own discretion, the rule cited by Harmer does not create a property interest in the disciplinary handbook.[2]
 
 
 8
 Harmer has presented no basis for relief under 28 U.S.C. § 2254. We therefore AFFIRM the judgment of the district court dismissing Harmer's petition.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 A person assigned to credit class one earns one day of credit time for each day he is imprisoned for a crime or confined awaiting trial or sentencing. A person assigned to credit class two earns one day of credit time for every two days he is imprisoned for a crime or confined awaiting trial or sentencing. A person assigned to credit class three earns no credit time. Ind.Code § 35-50-6-3 (1992)
 
 
 [2]
 Even if Harmer did have a property interest in a personal copy of the handbook, he would be unable to establish a deprivation of his property. Harmer received a personal copy of the disciplinary handbook when he entered the custody of the Indiana Attorney General in 1979. A copy of his signed receipt is included in the record. Harmer signed for and received another copy of the handbook in July of 1989. He therefore cannot complain that he was deprived of property without due process of law, for the prison officials did not deprive him of anything. Harmer claims that he was not reissued a copy of the handbook upon his return to custody following his 1981 escape from prison. While the record supports this claim, the record does not support the claim that he was systematically deprived of a copy of the handbook over the next eight years. In his administrative appeal of the 1982 CAB decision Harmer cites to a specific page and subsection of the disciplinary handbook to argue an alleged error. And Harmer filed a petition for writ of habeas corpus in state court challenging the 1982 hearing (on grounds different than in his present federal petition) in which he cited to the handbook. Finally, Harmer's administrative appeal of the 1989 hearing contains numerous citations to the handbook. Harmer attempts to explain away these citations to the handbook by claiming that he copied them from work done by other inmates. Nevertheless, this explanation does not detract from the fact that Harmer has failed to establish that he was unable to obtain a copy of the handbook from the prison library